This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **No. 30,119**

**MARCELLO SILVA, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant


**MEMORANDUM OPINION**

**SUTIN, Judge.**

Defendant Marcello Silva appeals his jury conviction of two counts of violating an order of protection contrary to NMSA 1978, Section 40-13-6 (2008). Defendant makes three arguments on appeal: (1) the district court erred in denying Defendant's jury instructions pertaining to mistake of fact and the elements of the crime, (2) Section 40-13-6 is void for vagueness, and (3) the district court erred in allowing an officer to testify as an expert. We Affirm.

**BACKGROUND**

Defendant and Victim have three children together. Pursuant to a finding of domestic abuse committed by Defendant, a district court judge approved a non-mutual order of protection that listed Defendant as the respondent and Victim as the petitioner. The order was recommended by a domestic violence commissioner, before whom a hearing had been conducted. The order indicated that Defendant was present at the hearing and that he was "properly served with a copy of the petition, temporary order of protection prohibiting domestic abuse and order to appear." The order prohibited domestic abuse against Victim by Defendant in various enumerated forms and also prohibited all contact of Victim by Defendant. The contact prohibitions directed Defendant to stay 100 yards away from Victim, her workplace, and her home at all times unless at a public place, where Defendant was required to remain 25 yards away from Victim. The order specifically prohibited Defendant from "telephon[ing],

talk[ing] to, visit[ing,] or contact[ing Victim] in any way[,]" with the exception of allowing telephone contact regarding medical emergencies of their minor children. A copy of the order was mailed to Defendant on February 23, 2007. The order was set to continue "until modified or rescinded by the court."

Attached to the order of protection, was a custody, support, and division of property order attachment (custody order). The custody order, which granted temporary legal and physical custody of the two oldest children (the youngest was not yet born when the order was issued), mandated that Defendant would have no in-person contact with the children, would stay 100 yards from them at all times, and that Defendant was permitted to contact the children only by mailed cards, gifts, and letters that would be screened by their mother. The custody order further instructed that child support would be continued in accordance with a prior court order and that each parent would notify the other about any emergency condition of the children. The provisions set forth in the custody order expired on July 9, 2007.

This case arose out of two phone calls, one in December 2008 and another in January 2009, made by Defendant, from the Lincoln County Detention Center, to Victim's father's house where Victim resided with her children. Victim testified at trial that she answered the phone both times Defendant called and both times refused to accept the call. Jeannette Walker, the booking officer for the Lincoln County

3

Detention Center, testified at trial that calls made by inmates are recorded and logged. Walker testified as to State's Exhibit 2, which was a phone log that confirmed Defendant made the two phone calls.

The State's third witness was police officer David Gallegos. Officer Gallegos testified that he had experience with domestic violence situations as a field officer responding to such calls and that in his present position as a training officer, he was certified to train police on domestic violence. Officer Gallegos testified that in his general experience, when an order of protection is in place, even "simple contact" is viewed very seriously because any kind of contact is a way of "reaching through" the order and showing the victim that "order or not, I'm going to have contact with you." According to Officer Gallegos, children are often placed in the middle of domestic violence situations, and simple contacts are often made to look better by saying "I was trying to talk to the children, or I was trying to talk to my sick grandmother," when in reality the defendant's goal is to show the victim that "I can still have contact with you."

After the State had presented its case, defense counsel made an offer of proof regarding Defendant's prospective testimony. In making the offer of proof, defense counsel intended to discover to what extent the prosecution would be permitted to inquire into Defendant's past conduct during cross-examination. Defense counsel

4

advised the court that Defendant would testify that he phoned Victim's father's house to talk to his children, that he had no intention of talking to Victim, that he did not know the order of protection was in effect because he believed that the expiration date on the attachment indicated that the entire order had expired, and that he did not think the order prohibited him from talking to his children. The court ruled that if Defendant testified regarding the reason he made the phone calls (purportedly to speak with his children), the prosecution would be allowed to test that assertion by questioning Defendant regarding the number of times he had phoned Victim since the order of protection had been in place, as well as the threats he made during those calls, which included threats to kill Victim. The court also ruled that, if Defendant testified that he believed the order of protection had expired, the prosecution would be permitted to question Defendant about a prior charge of aggravated stalking in violation of the order of protection because it would refute his contention that he thought the entire order had expired. The prosecution stated that Defendant had been charged with aggravated stalking in violation of the order of protection in May or June 2008, and the phone calls at issue in the present case were made in December 2008 and January 2009. Based on the court's rulings regarding what the prosecution would be permitted to raise during cross-examination, Defendant decided not to testify.

Defendant did not present any witnesses or evidence; therefore, at the close of the State's case, jury instructions were discussed. Defense counsel requested clarification on whether Defendant could present a defense that he did not knowingly violate the order of protection, insofar as he believed the entire order had expired. The court explained it would not permit an instruction that required that the jury find Defendant knowingly violated the order of protection because the statute did not contain an element that required a violation to be "knowing." The court clarified, however, if Defendant chose to testify, he would be permitted to read from the order of protection and explain that from his perspective he did not violate the order because it had expired and because he was calling his children. The court reiterated, however, that if Defendant testified that he called because he believed that the order had expired, it would open the door for the prosecution to question his motive for calling.

**DISCUSSION**

We examine each of Defendant's arguments in turn. We determine that the district court did not err in denying Defendant's mistake of fact or elements instructions because the language of the statute does not include a knowledge element for the crime. Next, we hold that Section 40-13-6 is not void for vagueness as applied to Defendant. Finally with regard to the officer's testimony, we conclude that Defendant did not properly preserve for appeal the issue of whether Officer Gallegos

6

testified as an expert or whether, as Defendant argues, he provided opinion testimony "clothed as an expert."

**Jury Instructions**

Defendant argues that the State's jury instructions did not properly track the elements of the statute. He further argues that he was denied due process by the district court's denial of his requested jury instructions, one of which included a requirement the jury find that Defendant knowingly violated the order of protection, and another that addressed mistake of fact.

We review the district court's acceptance or rejection of Defendant's submitted jury instructions de novo "because it is closer to a determination of law than a determination of fact." *State v. Ellis*, 2008-NMSC-032, ¶ 14, 144 N.M. 253, 186 P.3d 245 (internal quotation marks and citation omitted).

The jury was presented with the State's jury instruction on elements of the crime which read as follows:

> For you to find . . . [D]efendant guilty of violating an order of protection granted under the [F]amily [V]iolence [P]rotection [A]ct as charged . . . , the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. That an order of protection . . . was filed with the 12th Judicial District Court Clerk;

2.     That the order of protection was personally served upon . . . Defendant or . . . Defendant or his attorney were present at the time the order was issued;

3.     That the order of protection was in effect on or about [the dates the phone calls were placed];

4.     That . . . [D]efendant did violate the Contact Prohibitions Portions . . . of the order of protection in that he did telephone or contact [Victim];

5.     This happened in New Mexico on [the dates the phone calls were placed].

Section 40-13-6 reads, in pertinent part, as follows:

A.     An order of protection granted under the Family Violence Protection Act shall be filed with the clerk of the court, and a copy shall be sent by the clerk to the local law enforcement agency. The order shall be personally served upon the restrained party, unless the restrained party or the restrained party's attorney was present at the time the order was issued. The order shall be filed and served without cost to the protected party.

. . . .

F.     A restrained party convicted of violating an order of protection granted by a court under the Family Violence Protection Act is guilty of a misdemeanor and shall be sentenced in accordance with Section 31-19-1 NMSA 1978. Upon a second or subsequent conviction, an offender shall be sentenced to a jail term of not less than seventy-two consecutive hours that shall not be suspended, deferred[,] or taken under advisement.

Defendant's proffered instruction on the elements of the crime read as follows:

For you to find . . . [D]efendant guilty of violating an order of protection granted under the [F]amily [V]iolence [P]rotection [A]ct as

8

charged . . ., the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

> 1. That an order of protection . . . was filed with the 12th Judicial District Court Clerk;
>
> 2. That the order of protection was in effect on [the dates the phone calls were placed];
>
> 3. . . . Defendant knew about the order of protection;
>
> 4. . . . Defendant violated the order of protection;
>
> 5. . . . Defendant did not operate under a mistake of fact;
>
> 6. That this happened in New Mexico [on the dates the phone calls were placed].

Defendant presented an alternative jury instruction which was similar to the foregoing instruction and listed the following elements:

> 1. That an order of protection . . . was filed with the 12th Judicial District Court Clerk;
>
> 2. That the order of protection was in effect on [the dates the phone calls were placed];
>
> 3. . . . Defendant knew the order of protection was in effect;
>
> 4. . . . Defendant violated the order of protection;
>
> 5. That this happened in New Mexico [on the dates the phone calls were placed].

"Generally, an instruction that parallels the language of the statute and contains all essential elements of the crime is sufficient." *State v. Cawley*, 110 N.M. 705, 710, 799 P.2d 574, 579 (1990). Here, the district court determined that the State's proffered instruction, which was presented to the jury, adequately tracked all essential elements of the crime. We agree. Defendant's argument that he should have been allowed to add an element of knowledge to the jury instructions is neither supported by reference to persuasive authority, nor is it supported by the language of the statute, which does not require an element of knowledge. Therefore, since the elements instruction provided paralleled language of the statute and contained all essential elements of the crime, we determine that it was sufficient. *Id.*

Defendant further argues that the district court erred in denying his proffered mistake of fact instruction. Defendant's mistake of fact instruction read:

> Evidence has been presented that . . . [D]efendant believed that the [order of protection] expired on July 9, 2007. The burden is on the [S]tate to prove beyond a reasonable doubt that . . . [D]efendant did not act under an honest and reasonable belief in the existence of those facts. If you have a reasonable doubt as to whether . . . [D]efendant's action resulted from a mistaken belief of those facts, you must find . . . [D]efendant not guilty.

*See* UJI 14-5120 NMRA. Defendant argues on appeal, as he did in the district court, that he was mistaken with regard to the fact that the order of protection was still in effect, having thought it had expired along with the attachment. The district court

10

denied this instruction on the basis that it was not supported by Section 40-13-6(F), which does not require a "knowing" violation.

The State asserted and the district court agreed that the general intent instruction sufficiently instructed the jury. The instruction read, in part:

> In addition to the other elements of violation of [the order of protection], the [S]tate must prove to your satisfaction beyond a reasonable doubt that . . . [D]efendant acted intentionally when he committed the crimes. A person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know his acts are unlawful.

*See* UJI 14-141 NMRA.

On appeal, the State argues that violation of an order of protection is a general intent crime for which there is no intent element and, therefore, no requisite mental state that could be negated by a mistake of fact defense. The State further argues that in light of the general intent nature of the crime, all that the prosecution was required to prove at trial was that Defendant acted intentionally in phoning Victim's residence, regardless of whether he specifically knew that doing so would violate the order of protection. Defendant does not present any persuasive authority or argument to explain how the general intent instruction, which was given to the jury, inadequately addressed the statutory requirements, nor did he provide a reply brief to address the State's contention that the statute does not contain an intent element.

Because the plain language of the statute does not identify a requisite intent, we agree with the State and with the district court that the jury was properly instructed by the general intent instruction. General intent requires "only the intention to make the bodily movement which constitutes the act which the crime requires." *State v. Contreras*, 2007-NMCA-119, ¶ 16, 142 N.M. 518, 167 P.3d 966 (internal quotation marks and citation omitted). Where "the subject statute describes a particular act, without regard to intent to do anything further, all that is required is a general intent to do the proscribed act." *State v. Haar*, 110 N.M. 517, 521, 797 P.2d 306, 310 (Ct. App. 1990). Thus, regardless of whether he specifically knew his conduct would violate the order of protection, the act of placing the phone call violated the order of protection and therefore violated the statute. *See State v. Torres*, 2003-NMCA-101, ¶¶ 3-4, 10, 13, 134 N.M. 194, 75 P.3d 410 (affirming the defendant's conviction of carrying a firearm into a liquor establishment regardless of the defendant's contention that he had an honest and reasonable belief that the establishment did not serve liquor).

We further note that Defendant's claim that he was deprived of his right to due process because he was deprived of an opportunity to present a defense is unsupported by the record. The record indicates that Defendant, the only prospective defense witness, chose not to testify on his own behalf. He made this decision in order to

avoid cross-examination regarding his motive for placing the phone calls in December 2008 and in January 2009 and his knowledge of the order of protection which the prosecutor would have tested by raising facts related to earlier phone calls to Victim for which Defendant had been charged with violating the order of protection. Moreover, Defendant did not raise the issue of due process in the district court. We therefore decline to consider Defendant's due process argument. *See State v. Nichols*, 2006-NMCA-017, ¶¶ 29-30, 139 N.M. 72, 128 P.3d 500 (declining to review a due process argument that was not preserved in the district court).

**Void for Vagueness**

Defendant argues that Section 40-13-6 is void for vagueness and, therefore, his conviction should be reversed. Specifically, Defendant argues that the statute sets forth no clear notice of what is and is not a violation of the order of protection. Defendant asserts that the result of the alleged lack of clear standards set forth by the statute is that individuals cannot ascertain whether a violation of the statute includes phoning children who are not covered by the order of protection and that the statute allows arbitrary and discriminatory enforcement by the government and by juries.

We review de novo whether a statute is void for vagueness as applied to a defendant. *State v. Myers*, 2010-NMCA-007, ¶¶ 12-13, 147 N.M. 574, 226 P.3d 673, *rev'd on other grounds*, 2011-NMSC-___, ___ N.M. ___, ___ P.3d ___ (No. 32,126,

June 17, 2011). "There is a strong presumption of constitutionality underlying each legislative enactment and the challenging party bears the burden of proving it is unconstitutional beyond all reasonable doubt." *Id.* ¶ 13. A statute may fail a void-for-vagueness challenge on either of two grounds. *Id.* ¶ 14. One aspect of the test of vagueness is "whether the statute allows individuals of ordinary intelligence a fair opportunity to determine whether their conduct is prohibited." *State v. Laguna*, 1999-NMCA-152, ¶ 25, 128 N.M. 345, 992 P.2d 896. The other aspect is "whether the statute permits police officers, prosecutors, judges, or juries to engage in arbitrary and discriminatory enforcement of the statute, which occurs because the statute has no standards or guidelines and therefore allows, if not encourages, subjective and *ad hoc* application." *Id.* ¶ 26. Defendant argues that Section 40-13-6 fails the void-for-vagueness test on both grounds.

With regard to the first ground, Defendant points specifically to Section 40-13-6(D), which reads as follows:

> A peace officer shall arrest without a warrant and take into custody a restrained party whom the peace officer has probable cause to believe has violated an order of protection that is issued pursuant to the Family Violence Protection Act [NMSA 1978, §§ 40-13-1 to -12 (1987, as amended through 2010)] or entitled to full faith and credit.

Defendant also points to Section 40-13-6(F), which defines the crime, and reads as follows:

14

A restrained party convicted of violating an order of protection granted by a court under the Family Violence Protection Act is guilty of a misdemeanor and shall be sentenced in accordance with Section 31-19-1 NMSA 1978. Upon a second or subsequent conviction, an offender shall be sentenced to a jail term of not less than seventy-two consecutive hours that shall not be suspended, deferred[,] or taken under advisement.

Defendant maintains that "the statute does not put one on notice as to what, exactly, is prohibited[,]" arguing in particular that Section 40-13-6(F) is problematic because it does not clarify how a person violates the statute. In that regard, Defendant contends that he placed the calls to his children, and he states that "[t]here was no valid [order of protection] in place prohibiting contact between [D]efendant and his children."

A defendant will not succeed in a void-for-vagueness challenge "if the statute clearly applied to his conduct." *Laguna*, 1999-NMCA-152, ¶ 24. We view Defendant's challenge to Section 40-13-6 in light of the following facts: (1) Defendant was present at the hearing when the order of protection was granted; (2) the order prohibited him from telephoning, talking to, or contacting Victim in any way; (3) Defendant placed the phone calls in question; and (4) Section 40-13-6(F) provides that a restrained party convicted of violating an order of protection is guilty of a misdemeanor. *See Laguna*, 1999-NMCA-152, ¶ 24 (reviewing a challenge to the kidnapping statute "in light of the facts of the case and the conduct which is prohibited by the statute" (internal quotation marks and citation omitted)). We conclude that

15

Section 40-13-6, which criminalizes the violation of an order of protection, clearly applies to Defendant's conduct. We do not believe, nor does Defendant provide an explanation to persuade us, that the words of the statute are so vague as to prevent "individuals of ordinary intelligence [from having] a fair opportunity to determine whether their conduct is prohibited." *Laguna*, 1999-NMCA-152, ¶ 25. As Section 40-13-6 is sufficiently clear to allow individuals of ordinary intelligence a fair opportunity to conduct themselves within its parameters, we hold that it is not void for vagueness under the first aspect of *Laguna*. *See State v. Smile*, 2009-NMCA-064, ¶¶ 18-19, 146 N.M. 525, 212 P.3d 413 (rejecting the defendant's contention that the aggravated stalking statute was void for vagueness under *Laguna*'s first prong insofar as a person of ordinary intelligence reading the statute would understand its prohibitions and its consequences).

We are equally unconvinced by Defendant's argument that Section 40-13-6 is void for vagueness under the second aspect of the *Laguna* test such that it allows "police officers, prosecutors, judges, or juries to engage in arbitrary and discriminatory enforcement of the statute[.]" *Laguna*, 1999-NMCA-152, ¶ 26. As we have already discussed, the statute declares a violation of an order of protection to be a misdemeanor. *See* § 40-13-6(F). This is not a situation in which Section 40-13-6 is written so broadly that it "encompasses a great deal of harmless behavior,

16

permitting police officers arbitrary or standardless enforcement power." *Laguna*, 1999-NMCA-152, ¶ 33 (internal quotation marks and citation omitted). In our view, police officers, prosecutors, judge, and jury presented with the facts of this case, the language in the order of protection, and the language in the statute, would all be capable of reasonably determining whether Defendant's conduct violated the order and thereby violated the statute. *See Smile*, 2009-NMCA-064, ¶¶ 20-21 (holding that the aggravated stalking statute was not unconstitutionally vague insofar as it allowed the prosecutor to apply the law, as stated in the statute, to the conduct of the defendant, and determine therefrom that the defendant had violated the statute). We therefore hold that Section 40-13-6 is not so vague or lacking clear guidelines or standards that it would encourage ad hoc or arbitrary application. *See Laguna*, 1999-NMCA-152, ¶ 33 (holding that the kidnapping statute was not unconstitutionally vague and determining that there was "little evidence that an officer, prosecutor, judge, or jury would be unable to distinguish between innocent conduct and conduct threatening harm" (internal quotation marks and citation omitted)).

Having determined that individuals of ordinary intelligence could reasonably infer that Defendant's conduct under the circumstances of this case would be prohibited under Section 40-13-6 and having further determined that the statute's standards and guidelines are sufficiently clear so as to avoid subjective or ad hoc

17

application, we conclude that the statute is not void for vagueness. We further conclude that Defendant has not met the burden of proving Section 40-13-6 unconstitutional beyond a reasonable doubt to overcome the "strong presumption of constitutionality" underlying its enactment. *Myers*, 2010-NMCA-007, ¶ 13.

**Officer's Testimony**

Defendant's final argument on appeal is that the district court erred in allowing Officer Gallegos to testify as an expert or to provide opinion testimony clothed as an expert. The State contends and we agree that this argument was not preserved below. As Defendant does not make a fundamental error claim, we decline to address this argument on appeal. *See State v. Wyman*, 2008-NMCA-113, ¶ 10, 144 N.M. 701, 191 P.3d 559 (stating that "[o]n appeal, the reviewing court will not consider issues not raised in the trial court unless the issues involve matters of jurisdictional or fundamental error"). A general objection provides no basis for relief. *State v. Zarafonetis*, 81 N.M. 674, 676, 472 P.2d 388, 390 (Ct. App. 1970). For example, when an objection is made that the testimony is irrelevant, yet specifies no basis upon which it is inadmissible, the issue is not preserved. *Id.*

Here, the record indicates that, during a bench conference, defense counsel objected to the testimony of the officer as irrelevant. While we recognize that defense counsel commented that the officer's testimony would be "almost like getting into

18

some kind of expert testimony," this was not raised in the form of a specific objection, nor was a ruling of the court invoked on that basis. Rather, at the conclusion of the bench conference, defense counsel reiterated that the testimony was not relevant and requested a ruling on that basis. Later, during the State's direct examination of the officer, defense counsel renewed the objection; she did not raise the expert testimony issue or attempt to invoke a ruling on that basis. Under these circumstances, we hold that Defendant did not "make a timely objection that specifically apprise[d] the trial court of the nature of the claimed error [or] invoke[d] an intelligent ruling thereon" as required for preservation. *State v. Paiz*, 2011-NMSC-008, ¶ 27, 149 N.M. 412, 249 P.3d 1235 (internal quotation marks and citation omitted).

**CONCLUSION**

We affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**MICHAEL E. VIGIL, Judge**